Next case in our call today is agenda number 18, case number 109489, People v. Robert G. McDonough. Council, you may proceed. Thank you. I am Don Groshon. I represent Mr. McDonough. This is an interlocutory appeal from Jersey County, Illinois, involving the suppression of evidence based on a traffic situation of DUI case. The salient facts are that the state trooper in a marked squad car in uniform, and in the evening when it's dark, observed a stationary automobile parked to the side of a roadway, which was a river road. It's a four-lane roadway. He turned around, according to him in his testimony, to investigate whether the occupants of the vehicle needed some kind of assistance, and he pulled up behind this particular car in which McDonough and his wife were occupants, and turned on his oscillating light on the roof of his squad car. This, under our law, constitutes an arrest. The officer testified, tried to say at trial, that this was based on a motorist assist type situation, although he couldn't articulate what the assistance was. He said that perhaps there was a situation where there was a medical problem or a domestic. He opined that this could be the case. However, there was no evidence of that. The testimony showed that McDonough's car, sitting by the side of the road, did not have a wheel jacked up. It didn't have its hood up. The flasher and lights weren't on. There was no smoke. In short, no one was waving for help. There was no indication whatsoever that there was any kind of a problem that the driver needed assistance for. Counsel, first on where we're going here with this, it appears you relied on cases that equate community caretaking with consensual encounters. Well, that's what a lot of the law talks about, is consensual encounters. But that law, I think we straighten that out in the Ludeman case. You would agree a consensual encounter is not a seizure, wouldn't you? Consensual encounter? Is not a seizure? That's true, except I don't consider this to be a consensual encounter when it's only the consent of one of the people. All right, well, maybe we're not in much disagreement here, but a community caretaking encounter is a They consider that to be outside the realm of a seizure or of the Fourth Amendment. Well, I thought, you know, Ludeman seemed to clear up that a community caretaking encounter is a seizure that is lawful under the Fourth Amendment because the officer was acting in a public safety capacity. We can assume that. But if we do assume that, in this situation it's still not a community caretaker function. I know that that's what Justice Myerkoff viewed it as, which was different from the majority in the Fourth Appellate. So you don't find it reasonable for an officer to investigate a car parked on the side of the highway because the passengers might might be in need of some assistance? I don't find that reasonable any more than if you pulled the car over in traffic for the same reason. If you are driving down the road minding your own business in your car and the officer decides that he or because you have a passenger, maybe there's a domestic, which is what this officer said, I don't believe he has the authority to pull you over any more than I think he has the right to come up behind you. Are you focusing on the subjective thoughts of the officer rather than the an objective one as to whether or not somebody, it's reasonable to assume that if someone is sitting on categorically can't go out and check, are you in trouble? Do you have a flat tire? Is your car working? They can't go to the side of the road now and that is not a community caretaking function? Here there was absolutely no indication that anybody needed anything and it's awfully easy for one of these officers to articulate this after the fact that I decided I'd go check. That's why my question is, is it an objective analysis, car, side of the street, stopped, reasonable to assume something might be wrong or is the analysis subjective, namely did the officer think there might be criminal intent and it's a pretext to go over there and say something might be wrong with your car? You're saying it's subjective. It's the latter because here what the officer, if the officer thought that there was some real reason that the motorist needed help, that's what he would have talked about. He would have walked up to the car and here what he does is he walks up and he uses his flashlight inside the car to investigate. Here what the officer does, he says that he's concerned about maybe medical, maybe domestic, is that domestic battery? That's a crime. It is rather clear from what he does rather than so much what he says that what he's looking for is he's investigating criminal conduct. Well, I'm having trouble, obvious trouble. If the community caretaking, it is a seizure but it's allowed based on a balancing of the citizens private interests and against the public interest in having police perform their safety functions. Would you agree with that? Yes. All right. And doesn't clearly the public have an interest in having police officers check on motorists on the side of the highway? I don't know that that's true. I don't think that they check everybody that's parked on the side of the highway any more than they check everybody parked in parking lots or anyplace else. They selectively do this when when they have some other motivation but just just for them to randomly check, that's not what really happens in the real world. They will stop somebody or they will pull up behind somebody because they have a suspicion of some kind. This is an area under the facts where there are a lot of saloons, there's a lot of drinking and driving. The officer admitted that was the case. Interestingly, what he says is notwithstanding his knowledge of that, that wasn't even didn't even enter his mind when he made this particular... I'll let you go after this one, but doesn't the safety concerns invoke more than even the person on the side of the highway but also the cars that are going to be traveling on that same highway with a car parked on the shoulder? You're referring to the use of lights? Pardon? Are you referring to the use of the oscillating lights? No, I'm... Just the stop? I'm just referring about the community caretaking function of an officer having the right to investigate anytime somebody's on the side of the highway with the car stopped. Isn't the... doesn't the public safety ramifications go further than they then with respect to that one car having a flat tire or a problem with their engine? Doesn't the safety concerns also go to other people traveling on that highway with the car stopped on the shoulder? I don't see that safety concern is involved here at all. I see what a person does, what this officer does, is he arrests somebody without any probable cause, without any reasonable suspicion. He just pulls up and arrests the guy and there's absolutely no reason for him to have done that. Now it's awfully easy for him after the fact to say, well this was a community caretaking because I was concerned that there might have been a medical problem or something, when there's of course no evidence of that. There's no evidence the car had a problem. There's no evidence of anything being wrong. It's very similar to Marshall in Chicago, the recent case on the fifth, the first appellate, where they did the same thing. The policeman up there did the same thing. They saw Marshall. He was sitting in his car off the side of the road not doing anything. They mistakenly believe that he was illegally parked. Actually he wasn't illegally parked and it was a civil matter anyway under the city ordinances in Chicago, but nevertheless they come up behind him and the first appellate court held that was clearly an arrest. It's not a caretaking function. They pulled up behind him. They turned on the lights. Everybody, all the case law says that when you turn those lights on. No question. There's no question. A community caretaking function is a seizure. No one would question the turning on the MARS lights that that person would feel that he has been seized. But the balancing is and the question that I have for you is basically, do we look at the objective reasons for stopping or do we look at the subjective reasons of the officer? I think you look at both. And the question I think you have to answer at least for me is, isn't it always reasonable for an officer to check out why a car is stopped along the side of the road? I don't think it is. I don't think it's any of his business necessarily. That's an excuse that is used to investigate things. If you, if there is no objective reason at all to think that somebody needs assistance, it's awfully easy for that officer to say later at the courthouse when he's in sitting on the trial that, well I really stopped this guy or I really pulled up behind him because I was concerned for his welfare. They say that in every case. But rarely do you see a car just parked on the side of the road. It's, it's, it's an unusual situation. Actually what you see nowadays is people do that because they want to text message or use telephones and are not supposed to do that while they're driving and they'll pull over to make calls and things like that. Here, this guy said I pulled over because friends of mine were at the gas station I'm just waiting for him to catch up. I've done that. Can we look at the fact, the factual situation here as to whether this officer did something objectively reasonable? I think the facts were this was at night, it was a four lane, I don't know if it said divided or undivided highway. Shoulder was narrow, couldn't pull off more than eight inches off the side. Can the officer look at that and determine whether it's unusual that someone stopped there and maybe is in need of help or for safety for the traveling public that it's a concern that this is a divided highway? I think that there's no conceivable set of facts where some officer couldn't come up with some reason, some argument to justify his conduct. I'm saying can we look at the facts and say this is objectively reasonable no matter what the officer had in mind. I think you can. I absolutely think you can. If you look at what really happened here, if that officer parks behind this this man's car and he's concerned about his own welfare, that's what that's what the argument was from Justice Stagg in the fourth appellate, that turning on the oscillating lights, that he's concerned about his welfare and the welfare of other people. It's not really an arrest, you know, or it's permissible in any event. Let's suppose he came up behind him and instead used his bullhorn and didn't get out of his car and said hey stay in your car or get back in your car. Now is that an arrest? It's a restraint of his liberty in a significant way. There's no probable cause. There's no reasonable suspicion. So it's an arrest. I think where we're having difficulty and both based on Justice Carmeier's question and my own is in this whole idea of objective versus subjective. If the community caretaking function is based on an objective, I don't care if the officer says on the stand this car was parked on the side of the road, I thought he had drugs in the car, so I put on my MARS light and I stopped him. I had absolutely no belief that he had a flat, no belief that his engine, I thought he could have started the car up and rode away. I put him on, I stopped the car because I thought he had drugs in the car. Now pretty pretextual, right? Yes, sir. But if community caretaking is something that's based on objectivity rather than subjectivity, it matters not what the officer thinks. It only matters whether or not that is a reasonable caretaking function to go behind that car, put on the MARS lights because community caretaking is a seizure so it doesn't matter because he has the community caretaking function, there is an objective belief that it is reasonable to check out the situation. That's where we're missing here. I think we're blurring the two here and I think that when the officer goes in the courthouse and drove and testifies, this is what I did, this is why I did it, you can judge his credibility. And this guy's credibility was low. It is fairly obvious that what he said he was, why he was doing things isn't why he was really doing things. Even the trial judge, remember this is the guy that said, hey, if this guy had driven off, if the defendant, as soon as I got out of my squad car with the lights were going and I walked up behind him and he had just sped off, I wouldn't have followed him. All right, now that defies human experience and that we've seen case after case where that's the thing they rely on as probable cause to stop a reasonable suspicion, to stop somebody saying this guy fled and he shouldn't have. Here the officer said that, oh, no, he would not have pursued this defendant. Well, I think that tells you his credibility is low. And if you look at what he really did, for example, he says... Let me ask you this. Why wouldn't an officer have a public safety reason to, you said you should just let cars sit on the side of the road. He has to have a legitimate belief, in your opinion, that there is something wrong with that car and some reason that he stopped for him to employ the community caretaking function. So why shouldn't an officer just have the outright right to see what's going on for public safety reasons? Why should his concern, even if it's legitimate, outweigh a defendant's right not to be arrested for no reason at all? The court has equated this as an arrest and what happens here is, for no reason at all, this defendant gets arrested. If the justification for being arrested is, I was objectively, I can come up with a reason why I have the authority to go check into the situation to see if this guy needs any help. If that's all it takes, they'll stop, they can stop every car anytime they want to. All I got to do is say, I saw you driving along and I thought there was a domestic problem in your car because there were two people in the car. There's no difference between pulling you over for that reason or pulling up behind you when you're already stopped. It's the same thing. They use the same technique. Counsel, when the defendant's license was suspended based on his refusal to take the breathalyzer test, that's why it was suspended, right? Because of the license was suspended based on his refusal to take the breathalyzer test. This particular person was suspended and then the court rescinded it. And that's the second part of this analysis. What happens here is, the court rescinded it. That's a separate civil matter. It's well briefed that it is. There was no notice of appeal filed from that. So... The grounds for rescission are very limited, aren't they? The grounds for rescission are very limited? Correct. This was based on the Fourth Amendment. It was based on the fact that the stop was illegal. I'm sure that that's what it was based on the record. The issue wasn't preserved for the appellate court, but they vacated the order anyway. Interestingly, they did that under Rule 615B2, which is one that essentially says that you have authority to do things on matters collateral to the actual thing that's before you, if they're directly affected, if it was something that was subsequent in another order. And so that looks like why the appellate court did that. Interestingly, when I filed leave to appeal here and you granted it, the state, when I filed a brief, they said, well, hey, wait a minute, you can't put anything in your petition for leave to appeal about that particular issue. I thought, well, that's interesting because if it's okay for the state to argue in the appellate court under 615, even though they didn't file a notice of appeal or mention it, it ought to really be okay for me to do the same thing here under the same rule. You still have the same authority. So I think the issue is properly here. Well, we have rules, regardless of what the appellate court did, we have rules regarding being able to argue something that wasn't in your PLA. Thank God for that. No, I'm talking about the opposite, that if it's not in your PLA, it's waived. But on the summary suspension, you haven't provided any materials which indicate that the defendant sought review of his statutory suspension before the Secretary of State, have you? No. What happened was the rescission was rescinded. Okay? There wasn't any adverse ruling for me to do a fight. They rescinded the summary suspension. The state didn't appeal. So it's already been rescinded. The problem was the appellate court just vacated the trial court's order. That would put us back to square one again, although they didn't have authority to even consider it, in my judgment. Did the court do that sua sponte after it allowed your motion to suppress, take the action with regard to the statutory summary suspension? They did it. They didn't even really consider it. The trial court, what the, interestingly what the trial court I'm asking about what the trial court did. Did the trial court rule on the motion to suppress? Yeah. And at the same time say I'm rescinding the statutory suspension? No. How did that happen? They ruled first in January, early January on the motion to suppress. It was after that ruling that a request was filed to rescind the summary suspension. So it wasn't even happening at the same time. Then what the trial court did later is he made an entry that said he was rescinding the summary suspension based on the suppression. Was there any hearing on that or how did that? Well, interesting question. There was a videotape that the officer and the court reviewed at the time. And it was my understanding they did it all at the same time. It's not crystal clear from the record, I grant you. I believe that it was the state's duty to preserve the record since they were the appellants in the appellate court. And so if the record is insufficient, I think that that falls on the state. But more importantly on that point, the rescission question is a totally separate question. It is a civil matter and there are different civil rules. Did you provide any materials that would indicate that the defendant sought review of his statutory suspension before the Secretary of State? No, it never happened. Or that the Secretary of State has issued any order sui sponte? No. And do you provide any authority to indicate that the Secretary of State is required to act on a statutory summary suspension based on a suppression order in a criminal proceeding? Well, I'm not sure how the Secretary of State itself responds to that. But when they get a rescission order from a trial judge... Well, my question is have you provided us any authority on that issue? I don't have a specific case to refer you to, no. Okay. All right. Thank you. Thank you. Good morning, Your Honors. Mr. Groshong, may it please the Court, my name is David Iskowich with the Illinois Attorney General's Office on behalf of the people. I'd like to first start by answering Justice Thomas' question about Ludeman, just to clarify. Yes, in Ludeman, this Court differentiated between consensual encounters between police and citizens and what this Court has characterized as community cases. The community caretaking exception to the warrant requirement, a community caretaking exception when applied by a court presupposes or holds that a seizure has in fact occurred, but that it is a reasonable seizure under the circumstances when police officers are carrying out some of their many non-law enforcement or criminal investigation related duties. The other question that the Court was concerned with that I'd like to address in some length is whether we're dealing here with an objective test or a subjective test. The authority indicates that when this Court reviews Fourth Amendment questions of this nature, it is to apply an objective test. That is, in this case, was it objectively reasonable for Trooper Brunworth to believe under the circumstances that a parked car on a dark and busy four-lane highway at night was perhaps in need of assistance? Now, subjectively, my able opponent has taken issue with some of the credibility problems as he sees it with Trooper Brunworth's testimony. I think he overstates those problems somewhat. But be that as it may, under the objective standard that this Court must apply, he was entirely justified and his actions were reasonable when he pulled up behind the defendant's vehicle with his car indicated. The side of a busy four-lane highway is not a normal place to park a car. As a non-law enforcement officer driving down the road, my first thought upon seeing one of these vehicles is, wow, I wonder what's wrong. Certainly police officers who are trained to offer assistance in any, this variety of, in a variety of scenarios that may arise on our highways are objectively authorized. And it's certainly reasonable for them to inquire whether the driver might need help, is lost, is having a heart attack, as Trooper Brunworth testified he had encountered on one occasion. So the objective standard here certainly dictates in favor of finding that the seizure was reasonable under the circumstances. In addition to finding that it was reasonable under the circumstances, our appellate court has suggested that the court should also weigh when reviewing these community caretaking cases whether the intrusion was outweighed by the public interest. And certainly in this case, the minimal intrusion into the defendant's privacy was certainly outweighed by the social benefits that we as a society attain when police officers do their jobs right on the highways and make sure that people aren't in trouble. Trooper Brunworth approached the vehicle in this case and the defendant rolled his window down and he simply asked, is everything okay? Upon receiving that response, Trooper Brunworth testified that he smelled a very strong odor of alcohol coming from the defendant's breath. Now at that point in this analysis, we shift from the community caretaking doctrine or exception to a Terry stop. And authorities strongly suggest that when an officer smells alcohol in a driver's breath, he has reasonable suspicion under Terry v. Ohio to prolong that stop and investigate further because people who are driving cars who smell like alcohol may very well be, it's likely that they're driving drunk. At that point, Trooper Brunworth, according to protocol, returned to his car, checked the identifications of the defendant, everything checked out. He returned to the vehicle and asked the defendant to perform field sobriety tests, which the defendant failed. And these were on videotape. The question whether he passed the field sobriety tests were litigated somewhat in the trial court, but the trial court's final judgment on the suppression motion did not entail any review or argument with respect to the effect or the result of those field sobriety tests. The trial court's judgment on the suppression motion related solely to Trooper Brunworth's initial pull-up behind the vehicle with his lights flashing. Is that because that the suspension of a license is based on implied consent totally, and the fact that the person refused to take it? So that really is a different factual issue. Well, what happened then, Your Honor, just factually, I'll answer your question, just factually, after he failed the field sobriety tests, the defendant refused to take the breathalyzer. And at that point, that's where the implied consent statute kicked in, and this automatic summary suspension of his license kicked in, too. Right. So the rescission of that is a totally different hearing. It is a different hearing. And on that issue, the defendant in his brief makes much of this court's decision in people versus where, and he has seized upon some of the language in that case to support his position that at the rescission hearing, trial courts have the ability or obligation to determine whether the initial seizure of a person in a vehicle is acceptable under the Fourth Amendment in deciding whether to rescind the statutory summary suspension. And this is Part 2 of our brief. We submit that the four considerations in the summary suspension rescission, I'll call it the rescission statute, are, the first one is whether the defendant has been arrested, the second one, as applicable to this case. The second one is whether there are reasonable grounds to believe the defendant is intoxicated. However, our appellate courts, our appellate court has repeatedly and consistently deviated from the plain text of that reasonable grounds consideration in Prong 2 of the rescission hearing statute. And apart from looking at whether there are reasonable grounds to believe the driver is intoxicated, the appellate court has engrafted this other consideration on here that's supported not in the text, or anywhere else for any matter, that the arrest or the stop of the vehicle that preceded the reasonable grounds to believe that there was intoxication was lawful under the Fourth Amendment. Our General Assembly over the last 20 to 25 years has consistently moved in a direction away from requiring proof of a lawful arrest or a lawful stop at the rescission hearing. And in my brief I've detailed a number of cases on many pages about how the United States Supreme Court has declined in numerous civil cases to extend the exclusionary rule. Just to back up to people versus where, because I want to make sure I'm clear on the where decision here. In people versus where, this Court suggested that the question of probable cause at the suppression hearing can overlap with the question of reasonable grounds for belief of intoxication at the rescission hearing. And that is very well good and true. But it doesn't work as well in this case. Let me back up. It works if the discrete question at the suppression hearing is whether the officer had probable cause to believe the guy was drinking. That overlaps very nicely with the very same question at the rescission hearing, whether the officer has reasonable grounds to believe the guy was drinking. Here, however, we have a bit more tension because the rescission order was premised not on whether there were reasonable grounds to believe the guy was drinking, but on the antecedent question litigated at the suppression hearing whether or not the initial seizure of the defendant was appropriate. That has nothing to do with whether there were reasonable grounds for Trooper Burnworth to believe that the defendant had been drinking. And now I acknowledge that in that civil rescission case, the people failed to file a notice of appeal. I acknowledge that. However, as the appellate court did, it simply invoked its power under Rule 615 to simply vacate the rescission order because it was dependent upon its judgment reversing the Fourth Amendment issue. And this court should similarly follow the appellate court's reasoning on that point. It can simply vacate under Rule 615. However, and I know I'm in a position here of asking the court to exercise its supervisory authority, but this is a recurring issue in the appellate court, and the appellate court is under the misapprehension that it can consider whether the antecedent stop was appropriate in the rescission hearing. When all the statutory language indicates is that the court is to look solely at whether there were reasonable grounds to believe the defendant was drinking or intoxicated while driving. If the court doesn't have any further questions on either of these points, the people request that the court affirm the judgment of the appellate court for the grounds discussed here today and for those detailed in our brief and vacate the decision on the rescission question and hopefully offer some guidance on whether that statutory scheme is being improperly expanded by the appellate court in rescission hearings. Thank you, Your Honors. Thank you, Mr. Counsel. If it pleases the court, the question about the objectively reasonable stop is an interesting one. Here it flies in the face of what the real facts of the case are, and so if this court were to adopt a position that if an officer can conjure objectively reasonable facts, if he can voice some kind of objectively reasonable reason for an arrest, in spite of the fact that the evidence itself demonstrates to the opposite and that that's going to still justify the stop, then we've got what I consider to be a rather serious problem. Here, what it does is it opens a floodgate of arguments for stopping. All we're going to see in the future is if this is okay, every time the officer wants to stop, all he's got to do is come up with some kind of an explanation that somebody might need medical help. Somebody might need air in their tire. I mean, there's no end to this. There's never going to be an illegal stop again based on that kind of an argument. Counsel's reference to the Weir case is interesting because that wasn't argued in the lower courts at all. What the state seeks under Weir is an opportunity to have this court rule that suppression, or rather that the rescission issue cannot be based on a Fourth Amendment, and I don't believe that that's been preserved or argued below nor briefed, and so I don't believe this case is ripe for review in this particular case. For the reasons stated in the brief and in argument today, I ask that you reverse the appellate court and reinstate the judgments of the trial court. Thank you. Thank you, counsel. Case number 109489 will be taken under advisement as a judge.